### LEVIN et al. v. IMPROVED PROPERTY HOLDING CO.

(Supreme Court, Appellate Division, Second Department.    November 23, 1910.)

LANDLORD AND TENANT (§ 157*)—LEASES—CONSTRUCTION — ALTERATIONS AND IMPROVEMENTS—OWNERSHIP.

 A lease of a large room provided that all alterations, additions, or improvements made by either the landlord or tenant upon the premises should remain the property of the landlord at termination of the lease. *Held*, that the provision covered a long partition placed in the room from which shorter ones were carried to the wall, which was bolted or screwed to plugs set in the concrete floor and secured to the wall by screws and bolts, comprising 58 lineal feet of partition, 7 feet high, made of oak with glass panels and doors.

 [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 574, 575, 577; Dec. Dig. § 157.*]

Appeal from Municipal Court, Borough of Brooklyn, Third District.

 Action by Samuel Levin and another against the Improved Property Holding Company. Judgment of dismissal, and plaintiffs appeal. Affirmed.

Argued before WOODWARD, BURR, THOMAS, RICH, and CARR, JJ.

Max Schleimer, for appellants.

C. Bertram Plante, for respondent.

THOMAS, J. The Brunswick Site Company leased a room in a large building to one Sweet, who later sublet the same, subdivided by partitions, to various parties. Before the expiration of the term, Sweet sold the partitions to the plaintiffs, who bring this action in conversion against the landlord of the building. Sweet asserts that his wife as a subtenant erected and owned the partitions, but they were put up pursuant to the lease, and it governs. It does not appear by what tenure the defendant holds, but presumably traces its title through the lessor. The property consisted of a long partition, from which shorter ones were carried to the wall. They were bolted or screwed to several plugs, set in the concrete floor, and a number of fastenings set in or attached by screws or bolts to the wall. There were some 58 lineal feet of the partition, the height was seven feet, the material oak, and there were glass panels and door. Sweet had permission from the lessor's secretary to put them in, and this was necessary, as the lease provides:

"Third. That the party of the second part [Sweet] will not make any alterations, changes, additions to or improvements in said premises, or any part thereof, without the written consent of the party of the first part, * * * and the party of the second part covenants and agrees that the party of the second part will quit and surrender said premises at the end of said term, or upon the prior termination of this lease, in as good condition as the reasonable use thereof will permit. All alterations, additions or improvements which may be made by either of the parties hereto upon the premises hereby demised shall be and remain the property of the party of the first part, and shall remain upon and be surrendered with the premises as a part thereof, at the termination of this lease, without disturbance, molestation or injury."

The defendant claims title by virtue of this stipulation. If the partitions were trade fixtures, then the defendant could not resist their removal, unless the parties had by agreement changed the nature of the property. Durkee v. Powell, 75 App. Div. 176, 77 N. Y. Supp. 368. Similar stipulations in leases have been considered. In French v. Mayor, 29 Barb. 363, there was a covenant that the lessees would surrender the premises "and all the improvements that may have been placed thereon by the said" lessees, "and which improvements are to belong to the said parties of the first part, and all of which are to be surrendered up in as good state and condition," etc. The building leased was Castle Garden. It is stated in the opinion that it was manifestly contemplated that extensive improvements, changes, or alterations should be made by the lessees at their expense to adapt the demised premises, and that the lessors consented to such alterations and improvements on condition that at the expiration of the lease they were to become the lessors' property. The opinion also states that "improvements," as the word was used, "embrace every addition, alteration, erection, or annexation made by the lessees during the demised term, to render the premises more available and profitable, or useful or convenient to them," and that it is "a more comprehensive word than 'fixtures,' and necessarily includes it, and such additions as the law might not regard as fixtures." And it is added:

"It would be difficult to select a more comprehensive word; and, where the parties say that all improvements which may be placed on the premises shall belong to the lessors, it is difficult to say what, if anything, would be excluded. * * * It is difficult to see, upon the principles here enunciated, that any of the articles enumerated in the complaint in this action are not embraced in the covenants of the plaintiffs to surrender them. If any of them are not, then the plaintiffs will be entitled to recover for such, and such only."

The articles enumerated in the complaint were the lighting outfit, doors, floor, stage, benches, stage equipment, sheds, fences, etc.

In Jacob v. Kellogg, 56 Misc. Rep. 661, 107 N. Y. Supp. 713, the lease provided that the tenant should make all repairs at his own expense and deliver up the premises at the end of the term in good order and condition, and it was considered that a steam heating plant lost its character as personal property from the manner of its permanent annexation to the realty, and the serious injury which its removal would cause, and its peculiar adaptation to the use of the freehold.

In Center v. Everard, 19 Misc. Rep. 156, 43 N. Y. Supp. 416, there was a stipulation in the lease similar to the one in the case at bar, and it was decided that it covered "paneled mahogany ceiling, new wainscoting, baseboards, marble platforms, and slabs in the water-closet, all connected with the bar fixtures so as to constitute one piece." In the opinion it is stated that "alterations and improvements by the tenants were contemplated, and it was deemed that they should 'be deemed permanently annexed to the freehold and to become the property of the owners of the demised premises,'" and that the express contract of the parties was intended to cover fixtures which ordinarily might not be deemed permanent or annexed to the freehold.

In Bigalke & Eckert Co. v. Knabe & Co., 65 Misc. Rep. 29, 119 N. Y. Supp. 1114, the tenant sought to remove 55 feet of glass and mahogany partitions. The opinion states that the plaintiff agreed "that no nails, hooks, or screws should be driven in any part of the walls or woodwork of said leased premises, or any alterations made, without defendant's permission in writing, and also that it was particularly agreed that all alterations or improvements or additions put in by plaintiff, except movable office furniture, should become the property of defendant," and it was decided that a judgment for the tenant was erroneous.

But in United Booking Offices v. Pittsburgh Life & Trust Co., 65 Misc. Rep. 31, 119 N. Y. Supp. 216, the court distinguished the case last cited, and decided that sectional partitions lightly nailed to the floor and wall in substitution for permanent partitions by ·the tenant, under an agreement to replace the partitions removed at the end of the term, were practically trade fixtures and movable office furniture, rather than alterations, additions, or improvements. The tenant restored the permanent partitions, and removed the sectional partitions, and the court held it had a right to do so. In the earlier case (Bigalke & Eckert Co. v. Knabe & Co., supra) the partitions were regarded as not "movable office furniture," on account of the substantial manner of their installation.

In Metropolitan Concert Co. v. Sperry, 9 N. Y. St. Rep. 342, affirmed 120 N. Y. 620, 23 N. E. 1152, chairs secured to the floor by screws in a theater did not, as considered, fall under the terms "additions, alterations, and improvements," which terms referred to certain structural enlargements, and herein the case is similar to that of French v. Mayor, supra.

In Webber v. Franklin Brewing Co., 123 App. Div. 465, 108 N. Y. Supp. 251, the landlord sought to. recover for equipment, radiators, and chandeliers installed by the tenant and so affixed as to be readily detached, but the court considered them trade fixtures, and that the words "all improvements and alterations which may be put, placed, or made in or upon said premises shall belong to and become the property of the party of the first part (landlord) when so made, and treated as fixtures annexed to the freehold," did not cover the trade fixtures in question, but referred to extensive alterations and repairs to the building which the tenant agreed to make. There is nothing in the present case that permits such reference of the provisions to improvements to be made by the tenant.

Smusch v. Kohn, 22 Misc. Rep. 344, 49 N. Y. Supp. 176, involved an "ornamental mahogany partition, containing three bevel glasses and a colored glass on the door," which were claimed by the landlord by virtue of their nature, and a clause similar to the one in question. But Judge McAdam, whose knowledge of this subject was full and accurate, considered that the partition was not a fixture, and that the lease contemplated changes and additions to the freehold "and not the mere introduction of movable chattels brought in by the tenant for his personal use and the convenience of his trade." But this decision leaves open the question as to what in a given case is an addition to the freehold, so as to give the stipulation operation. If the addition to the

freehold is such that the article becomes a part of the realty, then there is no room for its application.

The property in question, in its nature and annexation, does not indicate an intention that it shall become a part of the realty. Nevertheless, if it is an addition, improvement, or change, it becomes the property of the landlord, whatever its independent physical adaptation or legal status. It was an alteration of the room from one unpartitioned to one partitioned, and added partitions where none existed. It is true that the partitions could be readily removed from the fastenings sunk into the floor or wall, but the attachments themselves were physical changes in the premises, and, although comparatively small in dimensions, their removal would leave the walls and floor defaced. The mutilations could have been obliterated at no great expense, yet the lease is not to be interpreted by the importance of the alterations or the extent of the damage that they would cause. I think it has not been the judicial thought that such an agreement can have reference only to substantial changes in the building with reference to parts that are of a permanent nature, and it is better to give the words their plain meaning, to avoid interpretation by letting them speak, and to place upon the parties who make such agreement the responsibility of qualifying and limiting their application, if that accords with the agreement.

The judgment should be affirmed, with costs. All concur.