■ In the Matter of KURT B. PUFF, Petitioner, v THOMAS C. JORLING, as Commissioner of the New York State Department of Environmental Conservation, Respondent.—Levine, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Ulster County) to review a determination of respondent which, *inter alia,* found that petitioner unlawfully operated two landfills and assessed civil penalties.

Petitioner operated two solid waste management facilities in the Town of Amenia, Dutchess County, known as the Berlinghoff site and the Rod & Gun Club site. In November 1989, the Department of Environmental Conservation (hereinafter DEC) charged petitioner with operating these two facilities without a permit on July 12, 1988 and July 19, 1988 in violation of ECL 27-0707 and 6 NYCRR former 360.2 (b).

After a hearing, the Administrative Law Judge (hereinafter ALJ) sustained the charges that petitioner operated both facilities on the two dates charged, without a permit, and accepted nonconstruction and demolition debris (hereinafter non-C&D debris) such as tires, clothing, carpeting, auto parts, plastic containers, furniture, household garbage and other items. The ALJ determined that petitioner failed to prove its

affirmative defense of an exemption (6 NYCRR former 360.1 [f] [1] [x]), which allowed sites to operate without a permit where they were used solely for the deposition of nonputrescible construction and demolition debris (hereinafter C&D debris) (6 NYCRR former 360.1 [d] [12]), because the waste found on the two subject sites included non-C&D debris. The ALJ noted that after the violations petitioner did not completely cooperate with DEC by failing to voluntarily complete remedial measures requested by DEC, although he did cease operations at both sites and partially comply. The ALJ recommended that the maximum civil penalty of $30,000, requested by respondent, was not warranted and instead recommended a $20,000 penalty and an additional $10,000 penalty suspended pending compliance with an approved closure plan. Respondent adopted the ALJ's findings, conclusions and recommendations, except that he assessed the maximum civil penalty of $30,000, ordered petitioner to post a surety bond, and directed petitioner to submit a closure plan for approval and thereafter comply therewith.

Petitioner commenced this CPLR article 78 proceeding seeking to annul respondent's determination. Respondent answered and counterclaimed for a judgment of $30,000 and an enforcement order. This proceeding was transferred to this Court by order of Supreme Court pursuant to CPLR 7804 (g).

On review, petitioner contends that respondent's determination is not supported by substantial evidence, and that the penalty and remediation order is arbitrary and capricious and contrary to respondent's promulgated policy of penalty assessment.

Initially, respondent concedes that the record does not contain substantial evidence indicating the presence of non-C&D debris at the Rod & Gun Club on July 12, 1988 and that his determination must be modified accordingly, with the $30,000 penalty for four days of violation reduced to $22,500 for three days of violation.

Regarding the remaining three charges,* petitioner essentially argues that while the testimony showed that non-C&D debris was *present* at the two sites on the dates charged, there was no substantial evidence showing that petitioner *accepted* non-C&D debris for disposal at the sites, and thus respondent has failed to establish the inapplicability of the exemption (6

---

* For the violations at the Rod & Gun Club site on July 19, 1988 and at the Berlinghoff site on July 12 and 19, 1988.

NYCRR former 360.1 [f] [1] [x]) from permit requirements for sites used solely for deposition of C&D debris.

The pertinent statute and regulation prohibited operation of a solid waste management facility without a permit (ECL 27-0707; 6 NYCRR former part 360). Such a facility is defined as "any facility employed beyond the initial solid waste collection process, including but not limited to * * * sanitary landfills" (6 NYCRR former 360.1 [d] [69]). A landfill is a "disposal facility * * * where solid waste is *placed in or on land*" (emphasis supplied) (6 NYCRR former 360.1 [d] [37]). Solid waste includes "any garbage, refuse * * * or any other waste material", subject to exclusions not applicable here (6 NYCRR former 360.1 [c] [1]). Disposal means simply the "discharge, deposit, injection, dumping, spilling, leaking or placing of any solid waste *into or on any land* or water" (6 NYCRR former 360.1 [d] [20]). Thus, contrary to petitioner's contention, the exemption from the violations charged is lost even if the non-C&D debris found at the sites was not actually bulldozed and buried into the sites.

At the administrative hearing, Peter Bavis, the Town Supervisor, testified that he visited petitioner's Berlinghoff site on July 12, 1988 and observed trucks dumping non-C&D debris such as bedding, rugs, a radiator hose, metal, trash bags, plastic containers, styrofoam cups, oil-soaked wood and cans. He also witnessed petitioner bulldozing the garbage around. He returned to the Berlinghoff site on July 19, 1988 and saw essentially the same non-C&D debris, and saw several people sorting out non-C&D debris. He further inspected the Rod & Gun Club site on July 19, 1988 and observed even more non-C&D debris.

DEC Conservation Officer Miles Schillinger, trained in detecting C&D debris, testified that he accompanied Bavis to both sites on July 19, 1988 and observed non-C&D debris, including tires, a hubcap, bedding, plastics, clothing, rugs and torn open plastic garbage bags containing household garbage such as milk cartons, at both sites. While some of the non-C&D debris was on the surface of the landfill, it had been crushed and leveled by machine.

DEC Geological Engineer Lawrence Gallagher testified that he inspected both sites in late July and August 1988 and observed essentially the same C&D and non-C&D debris mixed together. DEC Analyst John White testified that no permits had been issued for either site. Petitioner did not submit any evidence or call any witnesses.

It is well established that an agency determination made after an evidentiary hearing held by direction of law will be confirmed where it is supported by substantial evidence *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 231; CPLR 7803 [4]). The agency's assessment of the credibility of witnesses, inferences to be drawn from the evidence and findings of fact are conclusive if supported by substantial evidence *(see, Matter of Di Maria v Ross,* 52 NY2d 771, 772). While there was evidence that some of the non-C&D debris was being separated and diverted for off-site disposal, and that some of the non-C&D debris on the sites may have been discarded by pass-ersby, and that certain items identified as non-C&D debris may have been C&D debris, the significant evidence summarized above firmly supports the inference and conclusion that petitioner was operating landfills and accepting non-C&D debris without a permit. Accordingly, the determination, to the extent not conceded by respondent, is confirmed.

Petitioner additionally argues that respondent's assessment of the maximum penalty was arbitrary and capricious. Respondent imposed the maximum penalty of $7,500 for each of the four violations *(see,* ECL 71-2703 [1], [3]), for a total penalty of $30,000. Because the violation pertaining to the Rod & Gun Club site for July 12, 1988 is annulled as lacking substantial evidence, the $7,500 penalty for that violation must also be annulled, so that the remaining penalty for the three violations is $22,500, as respondent concedes.

With respect to the remaining penalty, it is well settled that a sanction imposed by an administrative agency, if based upon findings which are supported by substantial evidence, will not be disturbed unless it is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness *(see, Matter of Pell v Board of Educ., supra,* at 233; *Matter of Clumber Transp. Corp.,* 160 AD2d 1186, 1187). The ALJ considered the factors relevant to a penalty determination, including evidence that the Berlinghoff site might cause significant environmental harm by virtue of its proximity to the public water supply; that petitioner did not completely cooperate with DEC's remediation measures after the instant violations; and that petitioner was knowledgeable about the regulatory provisions and had been warned previously not to accept non-C&D debris at the Rod & Gun Club site. Respondent, relying on the same factors upon which the ALJ had relied, determined that the maximum penalty was warranted in that petitioner's "limited cooperation * * * is not sufficient to offset any of these aggravating factors". The factors upon

which respondent relied are fully supported by the record evidence. Gallagher's remediation plan for the Berlinghoff site was based on a Dutchess County Health Department official's indication that that site is 1,200 feet from a public well supply, which Gallagher testified could be contaminated. Gallagher estimated that the removal of solid waste from that site would cost approximately $50,000. To properly remediate the Rod & Gun Club site, Gallagher testified that it would have to be closed (see, 6 NYCRR 360-2.15) and investigated to determine possible leachate, at a cost of approximately $200,000. He also testified that he had warned petitioner on visits prior to the violation dates charged to remove non-C&D debris. The record supports respondent's determination that petitioner failed to heed DEC warnings and did not fully cooperate with DEC remediation efforts. Accordingly, the penalty determination, to the extent not conceded, should be sustained as it is supported by substantial evidence and does not shock our sense of fairness (see, Matter of Pell v Board of Educ., supra).

Petitioner also argues that the penalty is not in accordance with respondent's civil penalty policy issued in 1990. This policy is not included in the record on appeal and will not be considered (see, Chimarios v Duhl, 152 AD2d 508, 508-509). Additionally, petitioner failed to raise the issue before the ALJ that a separate hearing to determine damages should have been provided, and thus the issue is unpreserved for our review.

We have reviewed the remaining contentions raised by petitioner and conclude that they are without merit.

Yesawich Jr., J. P., Crew III, Mahoney and Harvey, JJ., concur. Adjudged that the determination is modified, on the law, without costs, by annulling so much thereof as found a violation on July 12, 1988 at the Rod & Gun Club site and the penalty imposed therefor; judgment granted to respondent on its counterclaim for enforcement of the $22,500 civil penalty; and, as so modified, confirmed.